# EXHIBIT A

## IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
## ROCK ISLAND COUNTY, ILLINOIS

| | |
|---|---|
| DR. RACHEL KOZICZKOWSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No.: 2020L63 |
| | ) |
| FOREFRONT DERMATOLOGY, S.C. | ) |
| | ) |
| Defendant. | ) |

### COMPLAINT

NOW COMES Plaintiff, Dr. Rachel Koziczkowski ("Dr. Koziczkowski"), by and

through her attorneys, O'Brien & Marquard, P.L.C., and pursuant to the Illinois Human Rights

Act brings this pregnancy and disability discrimination action against Defendant, Forefront

Dermatology, S.C. ("Forefront"), an Illinois corporation and alleges as follows:

### NATURE OF THE CASE

1.  This is an action for disability and pregnancy discrimination brought under the

Illinois Human Rights Act after an investigation into these claims by the Illinois Department of

Human Rights.

2.  This court has jurisdiction over this action pursuant to 775 ILCS 5/7A-102(D)(3).

3.  Venue is proper in the Circuit Court of Rock Island County under 775 ILCS 5/8-

111 because the discriminatory acts occurred in Rock Island County and because Illinois public

policy mandates this claim be brought in the county where the discrimination occurred.

### THE PARTIES

4.  Plaintiff, Dr. Rachel Koziczkowski, is a Board-certified dermatologist.

1

5.     Forefront Dermatology is a corporation that is organized and existing under the laws of Illinois.

6.     Forefront is a professional service corporation which operates dermatology physician practices in the State of Illinois.

7.     Forefront is an employer as defined in the Illinois Human Rights Act.

8.     Forefront owns and operates dermatology clinics in Illinois, Alabama, Colorado, Florida, Indiana, Iowa, Kansas, Kentucky, Maryland, Michigan, Minnesota, Missouri, North Carolina, Ohio, Pennsylvania, Virginia, Washington D.C., and Wisconsin.

9.     Dr. Koziczkowski is duly licensed to practice medicine in the State of Illinois.

10.    Dr. Koziczkowski was employed as a dermatologist at Forefront in its clinic located in Moline, Illinois.

## DR. KOZICZKOWSKI'S EMPLOYMENT WITH FOREFRONT

11.    Dr. Koziczkowski began working at Forefront on October 1, 2016 at its clinic located in Moline, Illinois.

12.    Dr. Koziczkowski and Forefront entered into an Employment Agreement on November 12, 2015.

13.    Prior to and at the time of her hire, Dr. Koziczkowski was offered a Sign-On Bonus, in the amount of Fifty Thousand Dollars ($50,000.00).

14.    Dr. Koziczkowski was specifically informed by Forefront that the Sign-On Bonus was not a cash advance.

15.    Forefront then tendered payment to Dr. Koziczkowski in the amount of Fifty Thousand Dollars ($50,000.00).

2

16. Forefront later unlawfully and without authorization deducted and obtained the Sign-On Bonus from Dr. Koziczkowski's compensation.

17. At the time Forefront required Dr. Koziczkowski to pay back the Sign-On Bonus, Dr. Koziczkowski had fully performed all of her obligations under the Employment Agreement.

18. At the time Forefront required Dr. Koziczkowski to pay back the Sign-On Bonus, Forefront had not provided notice of any kind to Dr. Koziczkowski that she had in any way violated the Employment Agreement or failed to perform her obligations.

19. In fact, at the time Forefront required Dr. Koziczkowski to pay back the Sign-On Bonus, Betsy Wernli confirmed that Dr. Koziczkowski had demonstrated strong effort and strong financial performance.

20. Betsy Wernli is the President of Forefront Dermatology.

21. As an employee of Forefront, Dr. Koziczkowski worked exclusively for Forefront at its clinic located in Moline, Illinois.

22. Dr. Koziczkowski never worked or treated patients at any Forefront clinic other than the Forefront clinic located in Moline, Illinois.

23. As an employee of Forefront, Dr. Koziczkowski did not have managerial or hiring authority over Forefront's employees.

24. Forefront was responsible for staffing and training all employees that worked with Dr. Koziczkowski in Forefront's clinic located in Moline, Illinois.

25. Prior to her hire, Forefront promised Dr. Koziczkowski that she would not be the only provider working in Forefront's Moline clinic.

26. Throughout the duration of her employment, Dr. Koziczkowski was the only provider working at Forefront's clinic located in Moline, Illinois.

3

27. Forefront did not afford Dr. Koziczkowski the authority to staff or manage the clinic in a manner that would meet patient needs.

28. Forefront required Dr. Koziczkowski to utilize its staff and communication systems to communicate with patients.

## DR. KOZICZKOWSKI'S PREGNANCY

29. As early as January of 2018, Dr. Koziczkowski notified Forefront of her need for pregnancy leave in conjunction with the anticipated birth of a child. Dr. Koziczkowski informed Forefront the leave was expected to be needed beginning in late June 2018.

30. Subsequently, Dr. Koziczkowski learned of a significant pregnancy complication in February 2018 and further learned in March of 2018 that her pregnancy would require an early delivery in May of 2018.

31. Within a week of discovering the pregnancy complication, Dr. Koziczkowski notified Forefront of her medical condition and the need for her pregnancy leave to begin sooner than previously anticipated due to her pregnancy complication and also notified Forefront of the need for Forefront to provide coverage for the Moline, Illinois location during her pregnancy leave.

32. At the time of Dr. Koziczkowski's initial request for pregnancy leave, she was informed by Forefront that Forefront provides its providers with coverage for their patients while on leave.

33. Dr. Koziczkowski understood she was going to have coverage for her clinic by week 38 of her pregnancy.

34. As a result of credentialing issues, that coverage did not materialize. Forefront failed to inform Dr. Koziczkowski of that development.

4

35. Forefront refused to take any additional action to provide adequate coverage for Dr. Koziczkowski's patients during her pregnancy leave. As a result, Dr. Koziczkowski was forced to refer certain patients to other dermatologists in the local community and to take aggressive measures in order to advocate for her patients during her pregnancy leave.

36. One Forefront manager went so far as to state to others that Dr. Koziczkowski did not want any coverage for the duration of her pregnancy leave. This was not true.

37. Further, as a result of pressure from Defendants and their refusal to provide adequate coverage for the Moline, Illinois clinic as promised, Dr. Koziczkowski was unable to take the entire twelve (12) weeks of pregnancy leave she planned on in order to care for and bond with her newborn child. Instead, her pregnancy leave lasted only 5 and ½ weeks.

38. Upon return from her abbreviated pregnancy leave, Dr. Koziczkowski found her clinic in complete disarray as Forefront failed to provide adequate staffing and scheduling necessary to meet the needs of Dr. Koziczkowski's patients.

39. Forefront's failure to provide adequate staffing and scheduling continued for weeks following Dr. Koziczkowski's return from pregnancy leave.

40. Dr. Koziczkowki received numerous complaints from patients stating Forefront's staff failed to answer and/or respond to patient concerns.

41. In some instances, Forefront's staff refused to allow patients to get in contact with Dr. Koziczkowski and refused to notify Dr. Koziczkowski of patient concerns.

42. Forefront's staff repeatedly failed to complete standard processes for sending biopsy and/or lap specimens for processing. In some instances, Dr. Koziczkowski was required to complete their duties on her own in order to treat the patient and/or meet patient needs.

5

43.    Dr. Koziczkowski complained repeatedly to her regional manager about Forefront's staff's failures to properly manage patients, labs, specimens or other needs of the clinic.

44.    Dr. Koziczkowski complained to other Forefront administrators about Forefront's staff's failures to properly manage patients, labs, specimens or other needs of the clinic.

45.    Despite such complaints, Forefront took no action to modify or cure the deficiencies in the Moline clinic.

46.    Forefront's failure to provide adequate staffing and training interfered with Dr. Koziczkowski's ability to provide treatment and care to her patients.

47.    Forefront's failure to provide adequate staffing and training further jeopardized Dr. Koziczkowski's reputation and career.

48.    Dr. Koziczkowski suffered physical complications following the birth of her daughter. Dr. Koziczkowski's doctor recommended she have a hysterectomy to treat those complications.

49.    Due to the stresses resulting from Forefront's mismanagement and neglect of Dr. Koziczkowski's clinic, Dr. Koziczkowski felt pressured to make a quick decision about the hysterectomy.

50.    After the hysterectomy, Dr. Koziczkowski sought a second opinion and learned that the complications could have been treated in a different manner.

51.    Dr. Koziczkowski provided written notice of default, pursuant to the terms of her employment agreement with Forefront, on September 4, 2018. That default notice addressed several concerns, including how Forefront handled her pregnancy leave, Forefront's unlawful recoupment of her sign-on bonus, and Forefront's mismanagement of the Moline clinic. Dr.

6

Koziczkowski demanded that Forefront cure the breach within the fifteen (15) day period provided for in the Agreement.

52. On September 4, 2018, the notice of material breach was sent to Dr. Betsy Wernli.

53. Forefront refused to take any action or otherwise cure its material breach of the Employment Agreement.

54. As such, the Employment Agreement was terminated on September 19, 2018, fifteen (15) days after the notice of breach was received.

55. After termination of the Employment Agreement, Dr. Koziczkowski offered to assist Forefront with its transition to a new provider in the Moline clinic and Forefront agreed to allow her to assist during the transition period.

56. After termination of the Employment Agreement and after offering to assist Forefront with its transition to a new provider in the Moline clinic, Dr. Koziczkowski never offered or agreed to remain employed by Forefront beyond the transition period.

57. After termination of the Employment Agreement and after offering to assist Forefront with its transition to a new provider in the Moline clinic, Dr. Koziczkowski's medical condition rendered her unable to assist Forefront during the transition period.

58. Dr. Koziczkowski has not worked in the Moline clinic since October 2018.

59. Dr. Koziczkowski took FMLA to treat her depression starting in October 2018 because of her was diagnosed with depression in late 2018.

60. In March 2019, Forefront abruptly discontinued health insurance coverage for Dr. Koziczkowski and her family.

61. Dr. Koziczkowski had little time to find replacement employment and was forced to take a position in Springfield, Missouri.

7

62.     Dr. Koziczkowski lived away from her family two to three weeks a month while she worked in Springfield, Missouri.

63.     On March 26, 2019, Dr. Koziczkowski filed a five-count complaint with the Illinois Department of Human Rights alleging disability discrimination, pregnancy discrimination, harassment based on discrimination, harassment based on pregnancy, and retaliation.

64.     The Illinois Department of Human Rights mailed its Notice of Dismissal for Lack of Substantial Evidence on February 14, 2020.

65.     The Notice provides Dr. Koziczkowski the right to file an action in the circuit court of the county where the discrimination occurred within 90 days of the date she receives the notice.

66.     Dr. Koziczkowski attorney's office received the Notice on February 20, 2020.

67.     Dr. Koziczkowski exhausted the administrative requirements for this action.

## COUNT I
## PREGNANCY DISCRIMINATION

68.     Dr. Koziczkowski restates and re-alleges Paragraphs 1 through 67 as if fully set forth herein.

69.     Defendant treated Dr. Koziczkowski differently than similarly-situated employees who were not pregnant when it engaged in the following activities:

- a. Demanding and/or pressuring Dr. Koziczkowski return to work five and ½ weeks after the birth of her daughter;

- b. Making Dr. Koziczkowski feel as if she had no choice but to return to work five and ½ weeks after the birth of her daughter;

8

c. Demanding and/or pressuring Dr. Koziczkowski return to work before her health care provider had cleared her to do so;

d. Harassing Dr. Koziczkowski for taking time off after the birth of her daughter and for taking time off to treat the resulting pregnancy complications;

e. Refusing and failing to pass along messages and information from Dr. Koziczkowski's patients to her as necessary to ensure their proper care;

f. Refusing to provide adequate coverage for Forefront's Moline, Illinois practice during Dr. Koziczkowski's pregnancy leave period;

g. Failing to properly manage and/or discipline Forefront's Moline office and that office staff during and after Dr. Koziczkowski's pregnancy leave;

h. Pressuring and forcing Dr. Koziczkowski to forfeit bonding time with her new baby;

i. Discouraging Dr. Koziczkowski from utilizing her pregnancy leave by recouping and/or refusing to provide Dr. Koziczkowski with the full amount of her Sign-on and Retention Bonus; and

j. Pressuring and forcing Dr. Koziczkowski to return to work before the expiration of pregnancy leave which worsened her medical condition and ultimately resulted in the need for Dr. Koziczkowski to have a hysterectomy performed.

70. Defendant's discrimination and harassment alternated the conditions of Dr. Koziczkowski's employment and made the work environment hostile, abusive, and intolerable.

71. Dr. Koziczkowski is entitled to and seeks recovery of compensatory damages, reinstatement, back pay, attorney's fees, costs, interest, and any such other damages as this Court deems necessary to make her whole.

9

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Koziczkowski hereby requests that this Court enter

judgment in her favor and against Defendants compensatory damages, reinstatement, back pay,

attorney's fees, costs, interest, any such other damages as this Court deems necessary to make

her whole, and for such other and further relief as this Court deems just and equitable.

## COUNT II
## DISABILITY DISCRIMINATION

72. Dr. Koziczkowski restates and re-alleges Paragraphs 1 through 71 as if fully set

forth herein.

73. Defendant treated Dr. Koziczkowski differently than similarly-situated employees

who were not disabled when it engaged in the following activities:

- a. Demanding and/or pressuring Dr. Koziczkowski return to work five and ½ weeks
  after the birth of her daughter;
- b. Making Dr. Koziczkowski feel as if she had no choice but to return to work five
  and ½ weeks after the birth of her daughter;
- c. Demanding and/or pressuring Dr. Koziczkowski return to work before her health
  care provider had cleared her to do so;
- d. Harassing Dr. Koziczkowski for taking time off after the birth of her daughter and
  for taking time off to treat the resulting pregnancy complications;
- e. Refusing and failing to pass along messages and information from Dr.
  Koziczkowski's patients to her as necessary to ensure their proper care;
- f. Refusing to provide adequate coverage for Forefront's Moline, Illinois practice
  during Dr. Koziczkowski's pregnancy leave period;

10

g. Failing to properly manage and/or discipline Forefront's Moline office and that office staff during and after Dr. Koziczkowski's pregnancy leave;

h. Pressuring and forcing Dr. Koziczkowski to forfeit bonding time with her new baby;

i. Discouraging Dr. Koziczkowski from utilizing her pregnancy leave by recouping and/or refusing to provide Dr. Koziczkowski with the full amount of her Sign-on and Retention Bonus; and

j. Pressuring and forcing Dr. Koziczkowski to return to work before the expiration of pregnancy leave which worsened her medical condition and ultimately resulted in the need for Dr. Koziczkowski to have a hysterectomy performed.

74. Defendant's discrimination and harassment alternated the conditions of Dr. Koziczkowski's employment and made the work environment hostile, abusive, and intolerable.

75. Dr. Koziczkowski is entitled to and seeks recovery of compensatory damages, reinstatement, back pay, attorney's fees, costs, interest, and any such other damages as this Court deems necessary to make her whole.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Koziczkowski hereby requests that this Court enter judgment in her favor and against Defendants compensatory damages, reinstatement, back pay, attorney's fees, costs, interest, any such other damages as this Court deems necessary to make her whole, and for such other and further relief as this Court deems just and equitable.

11

## COUNT III
## RETALIATION

76.     Dr. Koziczkowski restates and re-alleges Paragraphs 1 through 75 as if fully set forth herein.

77.     Defendants engaged in a course of retaliatory conduct against Dr. Koziczkowski after she requested leave following the anticipated birth of her daughter and after she complained about the discriminatory behavior of Forefront's management.

78. The retaliatory acts of Defendants include but are not limited to:

   a. Demanding and/or pressuring Dr. Koziczkowski return to work before the expiration of her pregnancy leave;

   b. Making Dr. Koziczkowski feel as if she had no choice but to return from pregnancy leave early;

   c. Demanding and/or pressuring Dr. Koziczkowski return to work before her health care provider had cleared her to do so;

   d. Refusing to provide adequate coverage for Forefront's Moline, Illinois practice during Dr. Koziczkowski's pregnancy leave period;

   e. Pressuring and forcing Dr. Koziczkowski to forfeit bonding time with her new baby;

   f. Pressuring and forcing Dr. Koziczkowski to return to work before the expiration of pregnancy leave which worsened her medical condition and ultimately resulted in the need for Dr. Koziczkowski to have a hysterectomy performed;

   g. Breaching Dr. Koziczkowski's employment contract by recouping and/or refusing to provide Dr. Koziczkowski with the full amount of her Sign-on and Retention Bonus;

12

h. Refusing to add another physician to Forefront's Moline, Illinois clinic as it had previously promised;

i. Refusing to hire a Mohs surgeon for Forefront's Moline, Illinois clinic as it had previously promised;

j. Constructively discharging Dr. Koziczkowski by creating working conditions which were intolerable such that Dr. Koziczkowski felt forced to resign.

79. One or more of the foregoing acts represents Defendants unlawfully retaliating against Dr. Koziczkowski for attempting to exercise her rights under the Illinois Human Rights Act.

80. Dr. Koziczkowski is entitled to and seeks recovery of compensatory damages, reinstatement, back pay, attorney's fees, costs, interest, and any such other damages as this Court deems necessary to make her whole.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Koziczkowski hereby requests that this Court enter judgment in her favor and against Defendants compensatory damages, reinstatement, back pay, attorney's fees, costs, interest, any such other damages as this Court deems necessary to make her whole, and for such other and further relief as this Court deems just and equitable.

Dated: May 14, 2020            Respectfully submitted,

*/S/Kelsey A. W. Marquard*
Kelsey A. W. Marquard, ARDC 6311205
O'Brien & Marquard, P.L.C.
2322 East Kimberly Road, Suite 100E
Davenport, Iowa 52807
563-355-6060 Telephone
563-355-6666 Facsimile
kawm@emprights.com  Email

ATTORNEY FOR PLAINTIFF

13

FILED
5/14/2020 7:43 PM
TAMMY WEIKERT, CIRCUIT CLERK
ROCK ISLAND COUNTY, IL

## STATE OF ILLINOIS
## IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
## ROCK ISLAND COUNTY

| | |
|---|---|
| DR. RACHEL KOZICZKOWSKI, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| | )            **2020L63** |
| v. | )   Case No.: _____ |
| | ) |
| FOREFRONT DERMATOLOGY, S.C., | ) |
| | ) |
| DEFENDANT. | ) |

### **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/S/Kelsey A. W. Marquard
Kelsey A. W. Marquard, ARDC 6311205
O'Brien & Marquard, P.L.C.
2322 East Kimberly Road, Suite 100E
Davenport, Iowa 52807
563-355-6060 Telephone
563-355-6666 Facsimile
kawm@emprights.com Email
ATTORNEY FOR PLAINTIFF

# EXHIBIT B


CT Corporation

**TO:**     Amy Bouressa, Paralegal
Forefront Management, LLC
801 York St
Manitowoc, WI 54220-4630

**RE:**     **Process Served in Illinois**

**FOR:**    Forefront Dermatology, S.C.  (Domestic State: WI)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | DR. RACHEL KOZICZKOWSKI, PLTF. vs. FOREFRONT DERMATOLOGY, S.C., DFT. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 2020L63 |
| **NATURE OF ACTION:** | Medical Injury |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Chicago, IL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 08/28/2020 at 02:10 |
| **JURISDICTION SERVED :** | Illinois |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780100075075 |
| | Email Notification, Amy Bouressa  abouressa@forefrontderm.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>208 S La Salle St Ste 814<br>Chicago, IL 60604-1101 |
| **For Questions:** | 866-203-1500<br>DealTeam@wolterskluwer.com |

Information displayed on this transmittal is for CT
Corporation's record keeping purposes only and is provided to
the recipient for quick reference. This information does not
constitute a legal opinion as to the nature of action, the
amount of damages, the answer date, or any information
contained in the documents themselves. Recipient is
responsible for interpreting said documents and for taking
appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

Case 2:20-cv-01856-LA     Filed 09/28/20     Page 17 of 59     Document 1-5



## PROCESS SERVER DELIVERY DETAILS

| | |
|---|---|
| **Date:** | Fri, Aug 28, 2020 |
| **Server Name:** | Mark Gascon |
| **Location:** | Plainfield, IL-CHI |

| Entity Served | Forefront Dermatology, S.C. |
|---|---|
| Agent Name | |
| Case Number | 2020 L 63 |
| Jurisdiction | IL-CHI |



## IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
## ROCK ISLAND COUNTY, ILLINOIS

DR. RACHEL KOZICZKOWSKI

v.

No. **2020 L 63**

· FOREFRONT DERMATOLOGY, S.C.

### ALIAS SUMMONS

#### To each defendant:

You are summoned and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, in the office of the clerk of this court within 30 days after service of this summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/get help.asp, or talk with your local circuit clerk's office.

#### To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with indorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so indorsed.

This summons may not be served later than 30 days after its date.

WITNESS, 7/27/2020 , 20

Attorney (or plaintiff if he is not represented by attorney) _____ Chleikast _____ (Clerk of Court)

Kelsey A. W. Marquard                                      JAN

Address 2322 E Kimberly Rd, Ste 140S          (Seal of Court)

City Davenport, IA 52807

Telephone 563-355-6060          Date of Service _____ , 20 _____

Facsimile Telephone 563-355-6000          (by... on copy left with defendant or other person)

(If service by facsimile transmission will be accepted, the telephone number of the plaintiff or plaintiff's attorney's facsimile machine is additionally required).

Summons/General 7/2018

## SHERIFF'S FEES

SERVICE AND/OR RETURN......................................... $_____
MILEAGE............................................................... $_____
TOTAL.................................................................. $_____

### I CERTIFY THAT I SERVED THIS SUMMONS ON DEFENDANT(S) AS FOLLOWS:
### (CHECK APPROPRIATE BOX AND COMPLETE INFORMATION BELOW)

(a)  (Individual defendants-personal):
By leaving a copy and a copy of the complaint with each individual defendant personally.

(b)  (Individual defendants-abode):
By leaving a copy and a copy of the complaint at the usual place of abode of each individual
defendant with a person of his family, of the age of 13 years or upwards, informing that person
of the contents and also by sending a copy of the Summons in a sealed envelope with postage
fully prepaid, addressed to each individual defendant at his usual place of abode.

(c)  (Corporation defendants):
By leaving a copy and copy of the complaint with the registered agent, office or agent of each
defendant corporation.

(d)  (Other Service):

| | |
|---|---|
| Name of Defendant_____ | Name of Defendant_____ |
| Name of Person | Name of Person |
| Summons given to_____ | Summons given to_____ |
| | |
| Sex_____Race_____Approx age____ _____ | Sex___Race_____Approx age_____ |
| | |
| Place of service | Place of service |
| _____ | _____ |
| Date of Service_____Time_____ | Date of Service_____Time_____ |
| Date of Mailing_____ | Date of Mailing_____ |
| | |
| By_____,Deputy | By_____, Deputy |

(e)  (Not found):
The within named_____not found in this County
This_____ day of _____, 20___.
Reason: _____

By_____, Deputy Sheriff of _____County.

Summons/General 7/2018

## IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
## ROCK ISLAND COUNTY, ILLINOIS

| | |
|---|---|
| DR. RACHEL KOZICZKOWSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No.: 2020L63 |
| | ) |
| FOREFRONT DERMATOLOGY, S.C. | ) |
| | ) |
| Defendant. | ) |

### COMPLAINT

NOW COMES Plaintiff, Dr. Rachel Koziczkowski ("Dr. Koziczkowski"), by and

through her attorneys, O'Brien & Marquard, P.L.C., and pursuant to the Illinois Human Rights

Act brings this pregnancy and disability discrimination action against Defendant, Forefront

Dermatology, S.C. ("Forefront"), an Illinois corporation and alleges as follows:

### NATURE OF THE CASE

1.     This is an action for disability and pregnancy discrimination brought under the

Illinois Human Rights Act after an investigation into these claims by the Illinois Department of

Human Rights.

2.     This court has jurisdiction over this action pursuant to 775 ILCS 5/7A-102(D)(3).

3.     Venue is proper in the Circuit Court of Rock Island County under 775 ILCS 5/8-

111 because the discriminatory acts occurred in Rock Island County and because Illinois public

policy mandates this claim be brought in the county where the discrimination occurred.

### THE PARTIES

4.     Plaintiff, Dr. Rachel Koziczkowski, is a Board-certified dermatologist.

1

5. Forefront Dermatology is a corporation that is organized and existing under the laws of Illinois.

6. Forefront is a professional service corporation which operates dermatology physician practices in the State of Illinois.

7. Forefront is an employer as defined in the Illinois Human Rights Act.

8. Forefront owns and operates dermatology clinics in Illinois, Alabama, Colorado, Florida, Indiana, Iowa, Kansas, Kentucky, Maryland, Michigan, Minnesota, Missouri, North Carolina, Ohio, Pennsylvania, Virginia, Washington D.C., and Wisconsin.

9. Dr. Koziczkowski is duly licensed to practice medicine in the State of Illinois.

10. Dr. Koziczkowski was employed as a dermatologist at Forefront in its clinic located in Moline, Illinois.

## DR. KOZICZKOWSKI'S EMPLOYMENT WITH FOREFRONT

11. Dr. Koziczkowski began working at Forefront on October 1, 2016 at its clinic located in Moline, Illinois.

12. Dr. Koziczkowski and Forefront entered into an Employment Agreement on November 12, 2015.

13. Prior to and at the time of her hire, Dr. Koziczkowski was offered a Sign-On Bonus, in the amount of Fifty Thousand Dollars ($50,000.00).

14. Dr. Koziczkowski was specifically informed by Forefront that the Sign-On Bonus was not a cash advance.

15. Forefront then tendered payment to Dr. Koziczkowski in the amount of Fifty Thousand Dollars ($50,000.00).

2

16.     Forefront later unlawfully and without authorization deducted and obtained the Sign-On Bonus from Dr. Koziczkowski's compensation.

17.     At the time Forefront required Dr. Koziczkowski to pay back the Sign-On Bonus, Dr. Koziczkowski had fully performed all of her obligations under the Employment Agreement.

18.     At the time Forefront required Dr. Koziczkowski to pay back the Sign-On Bonus, Forefront had not provided notice of any kind to Dr. Koziczkowski that she had in any way violated the Employment Agreement or failed to perform her obligations.

19.     In fact, at the time Forefront required Dr. Koziczkowski to pay back the Sign-On Bonus, Betsy Wernli confirmed that Dr. Koziczkowski had demonstrated strong effort and strong financial performance.

20.     Betsy Wernli is the President of Forefront Dermatology.

21.     As an employee of Forefront, Dr. Koziczkowski worked exclusively for Forefront at its clinic located in Moline, Illinois.

22.     Dr. Koziczkowski never worked or treated patients at any Forefront clinic other than the Forefront clinic located in Moline, Illinois.

23.     As an employee of Forefront, Dr. Koziczkowski did not have managerial or hiring authority over Forefront's employees.

24.     Forefront was responsible for staffing and training all employees that worked with Dr. Koziczkowski in Forefront's clinic located in Moline, Illinois.

25.     Prior to her hire, Forefront promised Dr. Koziczkowski that she would not be the only provider working in Forefront's Moline clinic.

26.     Throughout the duration of her employment, Dr. Koziczkowski was the only provider working at Forefront's clinic located in Moline, Illinois.

3

27. Forefront did not afford Dr. Koziczkowski the authority to staff or manage the clinic in a manner that would meet patient needs.

28. Forefront required Dr. Koziczkowski to utilize its staff and communication systems to communicate with patients.

## DR. KOZICZKOWSKI'S PREGNANCY

29. As early as January of 2018, Dr. Koziczkowski notified Forefront of her need for pregnancy leave in conjunction with the anticipated birth of a child. Dr. Koziczkowski informed Forefront the leave was expected to be needed beginning in late June 2018.

30. Subsequently, Dr. Koziczkowski learned of a significant pregnancy complication in February 2018 and further learned in March of 2018 that her pregnancy would require an early delivery in May of 2018.

31. Within a week of discovering the pregnancy complication, Dr. Koziczkowski notified Forefront of her medical condition and the need for her pregnancy leave to begin sooner than previously anticipated due to her pregnancy complication and also notified Forefront of the need for Forefront to provide coverage for the Moline, Illinois location during her pregnancy leave.

32. At the time of Dr. Koziczkowski's initial request for pregnancy leave, she was informed by Forefront that Forefront provides its providers with coverage for their patients while on leave.

33. Dr. Koziczkowski understood she was going to have coverage for her clinic by week 38 of her pregnancy.

34. As a result of credentialing issues, that coverage did not materialize. Forefront failed to inform Dr. Koziczkowski of that development.

4

35.     Forefront refused to take any additional action to provide adequate coverage for Dr. Koziczkowski's patients during her pregnancy leave. As a result, Dr. Koziczkowski was forced to refer certain patients to other dermatologists in the local community and to take aggressive measures in order to advocate for her patients during her pregnancy leave.

36.     One Forefront manager went so far as to state to others that Dr. Koziczkowski did not want any coverage for the duration of her pregnancy leave. This was not true.

37.     Further, as a result of pressure from Defendants and their refusal to provide adequate coverage for the Moline, Illinois clinic as promised, Dr. Koziczkowski was unable to take the entire twelve (12) weeks of pregnancy leave she planned on in order to care for and bond with her newborn child. Instead, her pregnancy leave lasted only 5 and ½ weeks.

38.     Upon return from her abbreviated pregnancy leave, Dr. Koziczkowski found her clinic in complete disarray as Forefront failed to provide adequate staffing and scheduling necessary to meet the needs of Dr. Koziczkowski's patients.

39.     Forefront's failure to provide adequate staffing and scheduling continued for weeks following Dr. Koziczkowski's return from pregnancy leave.

40.     Dr. Koziczkowki received numerous complaints from patients stating Forefront's staff failed to answer and/or respond to patient concerns.

41.     In some instances, Forefront's staff refused to allow patients to get in contact with Dr. Koziczkowski and refused to notify Dr. Koziczkowski of patient concerns.

42.     Forefront's staff repeatedly failed to complete standard processes for sending biopsy and/or lap specimens for processing. In some instances, Dr. Koziczkowski was required to complete their duties on her own in order to treat the patient and/or meet patient needs.

5

43. Dr. Koziczkowski complained repeatedly to her regional manager about Forefront's staff's failures to properly manage patients, labs, specimens or other needs of the clinic.

44. Dr. Koziczkowski complained to other Forefront administrators about Forefront's staff's failures to properly manage patients, labs, specimens or other needs of the clinic.

45. Despite such complaints, Forefront took no action to modify or cure the deficiencies in the Moline clinic.

46. Forefront's failure to provide adequate staffing and training interfered with Dr. Koziczkowski's ability to provide treatment and care to her patients.

47. Forefront's failure to provide adequate staffing and training further jeopardized Dr. Koziczkowski's reputation and career.

48. Dr. Koziczkowski suffered physical complications following the birth of her daughter. Dr. Koziczkowski's doctor recommended she have a hysterectomy to treat those complications.

49. Due to the stresses resulting from Forefront's mismanagement and neglect of Dr. Koziczkowski's clinic, Dr. Koziczkowski felt pressured to make a quick decision about the hysterectomy.

50. After the hysterectomy, Dr. Koziczkowski sought a second opinion and learned that the complications could have been treated in a different manner.

51. Dr. Koziczkowski provided written notice of default, pursuant to the terms of her employment agreement with Forefront, on September 4, 2018. That default notice addressed several concerns, including how Forefront handled her pregnancy leave, Forefront's unlawful recoupment of her sign-on bonus, and Forefront's mismanagement of the Moline clinic. Dr.

6

Koziczkowski demanded that Forefront cure the breach within the fifteen (15) day period provided for in the Agreement.

52.    On September 4, 2018, the notice of material breach was sent to Dr. Betsy Wernli.

53.    Forefront refused to take any action or otherwise cure its material breach of the Employment Agreement.

54.    As such, the Employment Agreement was terminated on September 19, 2018, fifteen (15) days after the notice of breach was received.

55.    After termination of the Employment Agreement, Dr. Koziczkowski offered to assist Forefront with its transition to a new provider in the Moline clinic and Forefront agreed to allow her to assist during the transition period.

56.    After termination of the Employment Agreement and after offering to assist Forefront with its transition to a new provider in the Moline clinic, Dr. Koziczkowski never offered or agreed to remain employed by Forefront beyond the transition period.

57.    After termination of the Employment Agreement and after offering to assist Forefront with its transition to a new provider in the Moline clinic, Dr. Koziczkowski's medical condition rendered her unable to assist Forefront during the transition period.

58.    Dr. Koziczkowski has not worked in the Moline clinic since October 2018.

59    Dr. Koziczkowski took FMLA to treat her depression starting in October 2018 because of her was diagnosed with depression in late 2018.

60.    In March 2019, Forefront abruptly discontinued health insurance coverage for Dr. Koziczkowski and her family.

61.    Dr. Koziczkowski had little time to find replacement employment and was forced to take a position in Springfield, Missouri.

7

62.     Dr. Koziczkowski lived away from her family two to three weeks a month while she worked in Springfield, Missouri.

63.     On March 26, 2019, Dr. Koziczkowski filed a five-count complaint with the Illinois Department of Human Rights alleging disability discrimination, pregnancy discrimination, harassment based on discrimination, harassment based on pregnancy, and retaliation.

64.     The Illinois Department of Human Rights mailed its Notice of Dismissal for Lack of Substantial Evidence on February 14, 2020.

65.     The Notice provides Dr. Koziczkowski the right to file an action in the circuit court of the county where the discrimination occurred within 90 days of the date she receives the notice.

66.     Dr. Koziczkowski attorney's office received the Notice on February 20, 2020.

67.     Dr. Koziczkowski exhausted the administrative requirements for this action.

## COUNT I
## PREGNANCY DISCRIMINATION

68.     Dr. Koziczkowski restates and re-alleges Paragraphs 1 through 67 as if fully set forth herein.

69.     Defendant treated Dr. Koziczkowski differently than similarly-situated employees who were not pregnant when it engaged in the following activities:

- a. Demanding and/or pressuring Dr. Koziczkowski return to work five and ½ weeks after the birth of her daughter;
- b. Making Dr. Koziczkowski feel as if she had no choice but to return to work five and ½ weeks after the birth of her daughter;

8

c. Demanding and/or pressuring Dr. Koziczkowski return to work before her health
care provider had cleared her to do so;

d. Harassing Dr. Koziczkowski for taking time off after the birth of her daughter and
for taking time off to treat the resulting pregnancy complications;

e. Refusing and failing to pass along messages and information from Dr.
Koziczkowski's patients to her as necessary to ensure their proper care;

f. Refusing to provide adequate coverage for Forefront's Moline, Illinois practice
during Dr. Koziczkowski's pregnancy leave period;

g. Failing to properly manage and/or discipline Forefront's Moline office and that
office staff during and after Dr. Koziczkowski's pregnancy leave;

h. Pressuring and forcing Dr. Koziczkowski to forfeit bonding time with her new
baby;

i. Discouraging Dr. Koziczkowski from utilizing her pregnancy leave by recouping
and/or refusing to provide Dr. Koziczkowski with the full amount of her Sign-on
and Retention Bonus; and

j. Pressuring and forcing Dr. Koziczkowski to return to work before the expiration
of pregnancy leave which worsened her medical condition and ultimately resulted
in the need for Dr. Koziczkowski to have a hysterectomy performed.

70.     Defendant's discrimination and harassment alternated the conditions of Dr.
Koziczkowski's employment and made the work environment hostile, abusive, and intolerable.

71.     Dr. Koziczkowski is entitled to and seeks recovery of compensatory damages,
reinstatement, back pay, attorney's fees, costs, interest, and any such other damages as this Court
deems necessary to make her whole.

9

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Koziczkowski hereby requests that this Court enter

judgment in her favor and against Defendants compensatory damages, reinstatement, back pay,

attorney's fees, costs, interest, any such other damages as this Court deems necessary to make

her whole, and for such other and further relief as this Court deems just and equitable.

## COUNT II
## DISABILITY DISCRIMINATION

72. Dr. Koziczkowski restates and re-alleges Paragraphs 1 through 71 as if fully set

forth herein.

73. Defendant treated Dr. Koziczkowski differently than similarly-situated employees

who were not disabled when it engaged in the following activities:

- a. Demanding and/or pressuring Dr. Koziczkowski return to work five and ½ weeks
  after the birth of her daughter;

- b. Making Dr. Koziczkowski feel as if she had no choice but to return to work five
  and ½ weeks after the birth of her daughter;

- c. Demanding and/or pressuring Dr. Koziczkowski return to work before her health
  care provider had cleared her to do so;

- d. Harassing Dr. Koziczkowski for taking time off after the birth of her daughter and
  for taking time off to treat the resulting pregnancy complications;

- e. Refusing and failing to pass along messages and information from Dr.
  Koziczkowski's patients to her as necessary to ensure their proper care;

- f. Refusing to provide adequate coverage for Forefront's Moline, Illinois practice
  during Dr. Koziczkowski's pregnancy leave period;

10

g. Failing to properly manage and/or discipline Forefront's Moline office and that office staff during and after Dr. Koziczkowski's pregnancy leave;

h. Pressuring and forcing Dr. Koziczkowski to forfeit bonding time with her new baby;

i. Discouraging Dr. Koziczkowski from utilizing her pregnancy leave by recouping and/or refusing to provide Dr. Koziczkowski with the full amount of her Sign-on and Retention Bonus; and

j. Pressuring and forcing Dr. Koziczkowski to return to work before the expiration of pregnancy leave which worsened her medical condition and ultimately resulted in the need for Dr. Koziczkowski to have a hysterectomy performed.

74. Defendant's discrimination and harassment alternated the conditions of Dr. Koziczkowski's employment and made the work environment hostile, abusive, and intolerable.

75. Dr. Koziczkowski is entitled to and seeks recovery of compensatory damages, reinstatement, back pay, attorney's fees, costs, interest, and any such other damages as this Court deems necessary to make her whole.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Koziczkowski hereby requests that this Court enter judgment in her favor and against Defendants compensatory damages, reinstatement, back pay, attorney's fees, costs, interest, any such other damages as this Court deems necessary to make her whole, and for such other and further relief as this Court deems just and equitable.

11

## COUNT III
## RETALIATION

76.     Dr. Koziczkowski restates and re-alleges Paragraphs 1 through 75 as if fully set forth herein.

77.     Defendants engaged in a course of retaliatory conduct against Dr. Koziczkowski after she requested leave following the anticipated birth of her daughter and after she complained about the discriminatory behavior of Forefront's management.

78. The retaliatory acts of Defendants include but are not limited to:

   a. Demanding and/or pressuring Dr. Koziczkowski return to work before the expiration of her pregnancy leave;

   b. Making Dr. Koziczkowski feel as if she had no choice but to return from pregnancy leave early;

   c. Demanding and/or pressuring Dr. Koziczkowski return to work before her health care provider had cleared her to do so;

   d. Refusing to provide adequate coverage for Forefront's Moline, Illinois practice during Dr. Koziczkowski's pregnancy leave period;

   e. Pressuring and forcing Dr. Koziczkowski to forfeit bonding time with her new baby;

   f. Pressuring and forcing Dr. Koziczkowski to return to work before the expiration of pregnancy leave which worsened her medical condition and ultimately resulted in the need for Dr. Koziczkowski to have a hysterectomy performed;

   g. Breaching Dr. Koziczkowski's employment contract by recouping and/or refusing to provide Dr. Koziczkowski with the full amount of her Sign-on and Retention Bonus;

12

h.  Refusing to add another physician to Forefront's Moline, Illinois clinic as it had
    previously promised;

i.  Refusing to hire a Mohs surgeon for Forefront's Moline, Illinois clinic as it had
    previously promised;

j.  Constructively discharging Dr. Koziczkowski by creating working conditions
    which were intolerable such that Dr. Koziczkowski felt forced to resign.

79.  One or more of the foregoing acts represents Defendants unlawfully retaliating

against Dr. Koziczkowski for attempting to exercise her rights under the Illinois Human Rights

Act.

80.  Dr. Koziczkowski is entitled to and seeks recovery of compensatory damages,

reinstatement, back pay, attorney's fees, costs, interest, and any such other damages as this Court

deems necessary to make her whole.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Koziczkowski hereby requests that this Court enter

judgment in her favor and against Defendants compensatory damages, reinstatement, back pay,

attorney's fees, costs, interest, any such other damages as this Court deems necessary to make

her whole, and for such other and further relief as this Court deems just and equitable.

Dated: May 14, 2020          Respectfully submitted,

                             /S/Kelsey A. W. Marquard
                             Kelsey A. W. Marquard, ARDC 6311205
                             O'Brien & Marquard, P.L.C.
                             2322 East Kimberly Road, Suite 100E
                             Davenport, Iowa 52807
                             563-355-6060 Telephone
                             563-355-6666 Facsimile
                             kawm@emprights.com Email

                             ATTORNEY FOR PLAINTIFF

13

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
ROCK ISLAND COUNTY

| | |
|---|---|
| DR. RACHEL KOZICZKOWSKI, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) Case No.: **2020L63** |
| | ) |
| FOREFRONT DERMATOLOGY, S.C., | ) |
| | ) |
| DEFENDANT. | ) |

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/S/Kelsey A. W. Marquard
Kelsey A. W. Marquard, ARDC 6311205
O'Brien & Marquard, P.L.C.
2322 East Kimberly Road, Suite 100E
Davenport, Iowa 52807
563-355-6060 Telephone
563-355-6666 Facsimile
kawm@emprights.com Email
ATTORNEY FOR PLAINTIFF

# EXHIBIT C

## EMPLOYMENT AGREEMENT

This Employment Agreement (this "Agreement") is entered into as of _____Nov 12_____, 2015 (the "Effective Date") between Dermatology Associates of Wisconsin, S.C., a Wisconsin service corporation, with its principal place of business located at 801 York Street, Manitowoc, Wisconsin (d/b/a Forefront Dermatology) ("Forefront") and Rachel Ade Koziczkowski, M.D. ("Physician") (Forefront and Physician may be referred hereafter individually as a "Party" or collectively as the "Parties").

### RECITALS

Forefront is a professional service corporation which operates dermatology physician practices in Illinois;

Physician is a medical doctor trained in the specialty of Dermatology who is duly licensed to practice medicine in the State of Illinois;

It is the desire of the Parties to enter into an employment agreement for the purpose of establishing the terms and conditions of Physician's employment by Forefront.

**NOW THEREFORE**, in consideration of the mutual promises and covenants contained in the Agreement, the Parties agree as follows:

### I. EMPLOYMENT

1. <u>Employment</u>. Forefront employs Physician and Physician accepts employment with Forefront as a medical physician in the professional practice conducted by Forefront and will be employed under the terms and conditions set forth in this Agreement. The initial term of Physician's employment ("Initial Term") is stated on **Exhibit A**. Unless either Party terminates the Agreement, as outlined in <u>Section V</u>, this Agreement will automatically renew at the end of the Initial Term for an additional term of two years ("Term") and at the end of each Term for an additional Term of two years.

2. <u>Physician's Duties</u>. Physician's principal duties are to provide medical care in Physician's specialty to patients of Forefront and such other duties as may be assigned by Forefront's management or its Board of Directors. Forefront's Board of Directors may recommend, review, and revise corporate-wide policies and procedures related to the duties and responsibilities of Forefront physicians from time to time. Physician agrees that hours of work may be further modified and directed by Forefront management or its Board of Directors.

3. <u>Physician to Devote Best Efforts</u>. Physician must devote his/her full-time, attention, effort, skill and energies to the performance of the duties set forth in this Agreement and the business of Forefront on an exclusive basis. Physician cannot engage in any outside medical practice or similar activities as are carried on by Forefront or in any other business, regardless of whether such activity is pursued for financial advantage, without Forefront's prior written consent. All fees collected by Physician or in Physician's name for outside professional services will belong to Forefront and must be assigned by Physician to Forefront, except as otherwise as agreed to by Forefront.

### II. LICENSURE AND MEMBERSHIPS

1. <u>State Licensure</u>. As an express condition of employment, Physician must be and remain duly licensed by the State of Illinois to practice medicine without restriction. Physician must provide proof of current licensure upon request by Forefront.

2. <u>DEA Registration and State Drug Registration</u>. As a condition of employment, Physician

Page 1 of 11

*Approx Start Oct or Nov 2016*

must maintain registration with the Drug Enforcement Administration ("DEA") and any applicable State agency where physician practices without any limitation on Physician's authority to prescribe drugs and controlled substances under such registrations. Physician must provide proof of current DEA and applicable State agency registration upon request by Forefront.

3. <u>Medical Staff and HMO/PPO Memberships</u>. As a condition of employment, Physician must take reasonable steps to obtain and maintain membership in, such health maintenance organizations, hospital or medical staff privileges, preferred provider organizations, individual practice associations and other managed care arrangements which Forefront may from time to time designate including, without limitation, as determined by Forefront to be necessary or advisable in connection with participation in contracts with third-party payors negotiated by Forefront or on Forefront's behalf.

4. <u>Medicare and Medicaid Certification</u>. As a condition of employment, Physician must maintain Medicare/Medicaid certification, and in the event Physician is excluded from for any period of time or is any way sanctioned by the Medicare/Medicaid program, Physician must immediately notify Forefront. Physician must also notify Forefront within five days of receipt of an initial sanction notice, notice of proposed sanction or the commencement of any investigation, or the filing of charges by a Medicare peer review or quality improvement organization, the Department of Health and Human Services, or any law enforcement agency or health regulatory agency of the United States, the State of Illinois or any other venue where Physician is licensed to practice medicine.

5. <u>Board Certification/Eligibility</u>. Unless otherwise stated on **Exhibit A**, Physician must obtain board certification in Physician's specialty and any subspecialty no later than three years after completion of Physician's training, or if such training was completed more than three years prior to the Effective Date, then Physician must be board certified as of the Effective Date. Physician, as a condition of employment, must remain board certified in Physician's principal area of practice at all times after the date Physician obtains or is required to obtain such board certification. Unless otherwise stated on **Exhibit A**, exceptions to the requirements of this <u>Section 2.5</u> may only be granted by Forefront's Board of Directors.

**III. COMPENSATION**

1. <u>Base Salary</u>. For all services rendered by Physician pursuant to this Agreement, Forefront will pay Physician an annual base salary ("Base Salary") as set forth in **Exhibit A** of this Agreement.

2. <u>Bonus</u>. In addition to Physician's Base Salary, Physician may be entitled to a discretionary productivity bonus as determined by Forefront in its discretion. If Forefront decides to pay such bonus to Physician, the timing of any such bonus payment or payments will be determined by Forefront at the time the bonus is awarded. Physician's performance and adherence to work rules, including, but not limited to, all provisions of this Agreement (e.g., <u>Section 4.5</u>), will be taken into account by Forefront when determining the amount of discretionary bonus that may be awarded.

3. <u>Fringe Benefits</u>. Physician is entitled to participate in or receive benefits under any retirement savings, defined benefits, life insurance, health and accident plan or arrangement that Forefront establishes and amends from time to time for its full-time similarly situated physician-employees generally, subject to and on a basis consistent with the terms, conditions and overall administration of such plans or arrangements adopted by Forefront for the benefit of its physician-employees. Forefront has no obligation to provide or continue any such plans

or arrangements that might be in effect from time to time and Forefront reserves the right to terminate any plan or arrangement at any time in accordance with applicable law.

4. <u>Other Benefits</u>. Physician is entitled to such other benefits as set forth in **Exhibit A** of this Agreement.

5. <u>Partnership Opportunity</u>. Physician will be considered for equity ownership in Forefront and its affiliates two years after the Effective Date of this Agreement. The decision to offer Physician equity ownership is at the discretion of Forefront.

6. <u>Reduction</u>. In the event that the Physician fails to maintain an appropriate productivity level, including, but not limited to, collecting enough revenue to cover costs associated with Physician's employment, Forefront reserves the right to modify the Physician's Base Salary. Furthermore, the Parties acknowledge that certain economic conditions outside of the Parties' control, including, but not limited to, recession, implementation of national healthcare reform, and revisions to current reimbursement schedules, may dramatically impact the profitability of Forefront, and as such, in the event Forefront determines in its sole judgment that there is a significant fluctuation in the profitability of Forefront, Forefront reserves the right to modify Physician's Base Salary at a level consistent with the modifications made to base salary of its similarly situated physician-employees at that time. Any modifications made pursuant to this <u>Section 3.6</u> will be communicated to Physician no less than thirty (30) days prior to their implementation, and if Physician does not agree with such modifications, Physician shall be entitled to terminate this Agreement with no less than thirty (30) days' notice to Forefront.

## IV. OBLIGATIONS OF PHYSICIAN

1. <u>Standard of Performance</u>. Physician must provide the services specified in <u>Section I</u> of this Agreement exercising Physician's independent professional medical judgment in the provision of services at a generally recognized professional level of quality, and must do all things necessary and/or reasonably proper to provide and maintain quality patient care and services within the limits of Physician's training and experience.

2. <u>Professional Liability Insurance</u>.

    2.1. <u>Coverage</u>. Physician will at all times during Physician's employment with Forefront cooperate fully with Forefront in all respects so as to allow Forefront to maintain professional liability insurance on behalf of Physician from an insurer selected by Forefront, in its reasonable discretion, and to allow Forefront to maintain Physician's participation in any applicable injured patient compensation fund (if participation in such fund is applicable, based upon Physician's practice location and licensure). Physician will take such steps as required to maintain eligibility for insurance under the professional liability policy or policies at a commercially reasonable cost, as determined by Forefront, carried by or on behalf of Forefront with respect to Physician's specialty. Physician must notify Forefront immediately upon cancellation, limitation, or a material increase in premiums, for any reason, of the insurance required under this <u>Section 4.2.1</u>. Parties agree that any oral or written communications to Physician by an insuring entity must be promptly forwarded to Forefront.

    2.2. <u>Tail Coverage</u>. In the event of termination of this Agreement for any reason, Physician must purchase, at Physician's expense, an extended reporting endorsement for professional liability coverage ("tail coverage") for the period of time Physician was employed by Forefront, and the tail coverage must be

underwritten by the same entity that issued Physician's liability insurance coverage pursuant to Section 4.2.1, above, covering Forefront and Physician at such limits equal to the liability coverage provided on Physician's behalf pursuant to Section 4.2.1, above. Physician must provide Forefront written evidence of the required tail coverage at least 14 calendar days before Physician's termination of employment unless such termination is immediate, in which event Physician must provide written evidence of such tail coverage within ten calendar days of Physician's termination date. If Physician fails to obtain and provide written evidence of the required tail coverage under this Section 4.2.2, then Forefront may obtain the tail coverage on behalf of Physician and seek full reimbursement from Physician.

2.3.    Indemnity and Hold Harmless. Physician agrees to indemnify and hold harmless Forefront and its shareholders, partners, members, directors, officers and employees from and against all claims, costs and damages arising out of any acts or omissions on Physician's part that are not covered by the insurance provided or required pursuant to either Sections 4.2.1 or 4.2.2, above. Similarly, Forefront agrees to indemnify and hold Physician harmless from and against all claims, costs and damages arising out of any acts or omissions of Forefront that are not covered by the insurance provided pursuant to Section 4.2.1, above.

3.    Physician's Conduct. Physician must at all times during Physician's employment by Forefront:

3.1.    Observe and conform to all laws and American Medical Association principles of medical ethics;

3.2.    Comply with all Forefront employment policies or procedures applicable to physician-employees that are in effect from time to time;

3.3.    Comply with all reasonable directions and orders of either Forefront management or Forefront's Board of Directors;

3.4.    Not use or disclose, except at Forefront's discretion, any professional secrets, confidential information or trade secrets relating to Forefront or any patients of Forefront, except that patient information may be disclosed in accordance with the laws of Illinois or any applicable federal law, code, regulation or rule.

4.    Confidentiality. Physician acknowledges that in the course of employment with Forefront, Physician will regularly receive and assist in compiling valuable trade secrets and other confidential and proprietary information about Forefront's patients, employees, contracts, finances, business practices and plans, and the practices of other health care professionals ("Confidential Information"). Physician recognizes that all such Confidential Information is the property of Forefront, and that during and for two years after the termination of Physician's employment with Forefront, for any reason, or until the Confidential Information becomes generally known without any fault or contribution of Physician, if that occurs first, Physician will not use, disclose or reproduce Forefront's Confidential Information under circumstances that could foreseeably result in the use of the Confidential Information in competition with Forefront in any county of Illinois where either Forefront or the Physician operate a physician office at the time of the termination of Physician's employment with Forefront. This Section 4.4 does not, and will not be interpreted to, restrict Physician's use of Confidential Information for the purpose of fulfilling Physician's obligations under this Agreement. Physician will not have any rights to such Confidential Information or to copies of such Confidential Information except as may be required by law or by contract and this

Case 2:20-cv-01856-LA    Filed 09/28/20    Page 39 of 59    Document 1-1

Section 4.4 will not be interpreted to prevent disclosure of any Confidential Information as may be required by applicable law, lawful subpoena or an order of a court of competent jurisdiction. With respect to any Confidential Information that constitutes a trade secret under Illinois law, the restrictions shall apply for as long as such information remains a trade secret.

5.   Records. Physician must prepare and cause to be submitted to Forefront on a timely basis (and always within seven days of the service being provided) a record of each service provided by Physician as necessary for Forefront billing, collection, management, and compensation purposes. Physician must prepare and file with Forefront on a timely basis (and always within seven days of the service being provided) reports and records of all examinations, procedures, and other services performed for patients, prepared in accord with Forefront's policies pertaining to medical records and which reflect the services rendered, the instructions given to the patient, and such other information as Forefront may require from time to time. If Physician does not provide the above-referenced reports and records within seven days of the service being provided, Forefront may discipline Physician. Physician recognizes that all patient and business records are the property of Forefront, and that during and after the term of Physician's employment Physician will not use or reproduce such records except for the purpose of fulfilling Physician's obligations under this Agreement or as otherwise directed by Forefront. Physician has no rights to such records or to copies of such records except as may be required by law or by contract.

## V.   TERMINATION

1.   Termination. The Agreement and Physician's employment with Forefront will be terminated if any of the following events occur:

1.1.   By either party, by providing written notice to the other party at least 180 days prior to the end of the Initial Term or Term, with an effective termination date at the end of the Initial Term or Term. In the event of termination for this reason, Forefront may elect to pay Physician for the period through the end of the Initial Term or Term and require that Physician no longer provide services or appear for work through the last day of the Initial Term or Term, but with the Physician's employment otherwise continuing through the period after such written notice through the end of the Initial Term or Term.

1.2.   At any time upon the mutual written agreement of the Parties.

1.3.   By either party, upon the material breach or violation of the terms of this Agreement by the other party, provided the breaching party has been given written notice specifying the nature of the breach or violation and a period of 15 days in which to cure such breach or violation, except that Forefront may immediately terminate Physician for "cause" if any of the following events occur:

(a) Upon the revocation, suspension or restriction of Physician's license to practice medicine in any state in which Physician is licensed, including the State of Illinois;

(b) Upon cancellation of Physician's professional liability insurance for any reason except nonpayment of premiums, upon refusal of Forefront's professional liability carrier to underwrite the professional liability coverage of Physician, or upon a material increase in the premiums for Physician's professional liability insurance, provided such material increase is specific to Physician and not an increase generally applicable to physicians;

Page 5 of 11

(c) Upon the revocation, suspension or restriction of Physician's DEA registration or applicable State registration to prescribe medications or controlled substances or the restriction of Physician's DEA registration or State registration to prescribe medications or controlled substances in a manner which substantially affects Physician's ability to perform Physician's responsibilities under this Agreement;

(d) Upon a finding of a court of law or by any regulatory body having authority over Physician's practice that Physician is guilty of fraud, dishonesty or other acts of misconduct in rendering professional services;

(e) Upon the imposition of any restriction or limitation on, or suspension or termination of Physician's ability to participate in any managed care program or any government or private insurance plan, regardless of the duration of the restriction, limitation or suspension;

(f) Upon a finding by Forefront, in its sole discretion, that Physician had engaged in any conduct that threatens serious injury to the welfare or reputation of Forefront or other Forefront physicians, including, but not limited to, acts of moral turpitude, engaging in acts of violence towards Forefront employees or patients, making statements (whether oral or written, and including any made on social media) that impugn or disparage Forefront or its employees, committing acts of professional negligence, willful misconduct in performance of obligations under this Agreement, or the conviction of a felony;

(g) Upon a finding by Forefront that Physician violated any employment policy or rule established by Forefront, including, but not limited to, harassment of any patient or Forefront employee, or Physician's improper use of alcohol, narcotics or other drugs;

(h) Upon a finding by Forefront, in its sole discretion, that Physician had engaged in any act of dishonesty in connection with the performance of Physician's job responsibilities; or

(i) Upon a finding by Forefront, in its sole discretion, that Physician had engaged in any act of insubordination or that Physician willfully disobeyed a lawful and reasonable directive from Forefront relative to the performance of Physician's professional responsibilities or duties under this Agreement.

Notwithstanding the occurrence of any event or conduct specified in this Section 5.1.3, the Parties agree that Forefront retains its rights under Section 5.1.1 of this Agreement.

1.4.    Upon Physician's death.

1.5.    Upon Physician's Disability that renders Physician unable to perform Physician's usual services as a physician for Forefront at the professional standard expected and required under the terms of this Agreement for a period that exceeds 180 days. For purposes of this Agreement the term "Disability" is defined as any illness or injury which prevents Physician from reasonably performing the essential functions of Physician's employment, including with any reasonable accommodation. If Forefront and Physician cannot agree as to the occurrence of Disability, then the question will be determined in writing by a qualified physician appointed by Forefront. This determination of Disability will be final and conclusive for purposes of this Agreement.

Page 6 of 11

1.6. In accordance with <u>Section 3.6</u>.

2. <u>Liquidated Damages</u>. Physician acknowledges and understands that if Physician would terminate his/her employment with Forefront, the prior written notice required by <u>Section 5.1.1</u>, above, is necessary to allow Forefront to locate and recruit a qualified replacement and to assure the uninterrupted service of medical care to Forefront patients. The Parties agree that if Physician decides to terminate his/her employment pursuant to <u>Section 5.1.1</u> of this Agreement without providing the required prior written notice, Forefront will suffer damages that are difficult or impossible to ascertain. As a result, in the event that Physician terminates his/her employment with Forefront without providing the required minimum 180 day prior written notice, Physician agrees to pay as liquidated damages $2,500 for every day that Physician failed to provide the required notice.

## VI.    FEES FOR SERVICES PAYABLE TO FOREFRONT

6.1    <u>Fees</u>.    All fees or charges for the professional services rendered by Physician under the terms of this Agreement are the property of Forefront, with the exception of any amounts attributable to individual consulting fees, honoraria for speaking engagements, fees for the performance of medical research not affiliated with Forefront, book royalties, remuneration for directorships and other similar amounts determined by Forefront's Board of Directors to be personal property of Physician. If any amount for services, which are the property of Forefront, are paid directly to Physician, then Physician must promptly remit and assign such amounts to Forefront. Physician may accept gifts of nominal value not exceeding fifty dollars in appreciation of Physician's services without accounting for the same to Forefront.

6.2    <u>Assignment of Professional Fees</u>. Physician agrees to assign to Forefront all amounts directly or indirectly attributable to professional medical services provided by Physician during the term of this Agreement, including, but not limited to, amounts paid by patients, insurance companies, employers, employer plans or other third-party payors or amounts paid pursuant to any workers' compensation program or governmental program.

6.3    <u>Assignment of Billing Rights</u>. Physician agrees to assign to Forefront all of Physician's rights to bill and collect for professional services rendered to patients on behalf of Forefront. In addition, Physician agrees to execute any additional documents required by Forefront in order to effectuate such assignment of billing and collection rights.

6.4    <u>Intellectual Property</u>.

6.4.1    <u>Work Product</u>.    The Physician acknowledges and agrees that all right, title and interest in and to all Work Product as well as any and all Intellectual Property Rights therein and all improvements thereof are and will be the sole and exclusive property of Forefront. The Work Product is and will at all times remain the Confidential Information of Forefront and Forefront will have the unrestricted right, in its discretion, whether or not to (a) use, commercialize or market any Work Product or (b) file an application for patent, copyright registration or any other Intellectual Property Rights and prosecute or abandon such application prior to issuance or registration. No royalty or other consideration will be due or owing to the Physician now or in the future as a result of such activities.

6.4.2    <u>Work Made for Hire; Assignment</u>. The Physician acknowledges that, by reason of being employed by Forefront at the relevant times, to the extent permitted by law, all Work Product consisting of copyrightable subject matter is "work made for hire" as defined in the Copyright Act of 1976 (17 U.S.C. § 101), and such

Case 2:20-cv-01856-LA    Filed 09/28/20    Page 42 of 59    Document 1-1

copyrights are therefore owned by Forefront. To the extent that the foregoing does not apply, the Physician hereby irrevocably assigns to Forefront, and its successors and assigns, for no additional consideration, the Physician's entire right, title and interest in and to all Work Product and Intellectual Property Rights therein, including the right to sue, counterclaim and recover for all past, present and future infringement, misappropriation or dilution thereof, and all rights corresponding thereto throughout the world. Nothing contained in this Agreement will be construed to reduce or limit Forefront's rights, title or interest in any Work Product or Intellectual Property Rights so as to be less in any respect than Forefront would have had in the absence of this Agreement.

6.4.3   Further Assurances; Power of Attorney. During and after the Physician's employment, the Physician agrees to reasonably cooperate with Forefront to (a) apply for, obtain, perfect and transfer to Forefront the Work Product as well as any and all Intellectual Property Rights in the Work Product in any jurisdiction throughout the world and (b) maintain, protect and enforce the same.   The Physician hereby irrevocably grants Forefront power of attorney to execute and deliver any such documents on the Physician's behalf in the Physician's name and to do all other lawfully permitted acts to transfer the Work Product to Forefront and further the transfer, prosecution, issuance and maintenance of all Intellectual Property Rights therein, to the full extent permitted by law, if the Physician does not promptly cooperate with Forefront's request (without limiting the rights Forefront has in such circumstances by operation of law). This power of attorney is coupled with an interest and will not be affected by the Physician's subsequent incapacity.

6.4.4.  Moral Rights. To the extent any copyrights are assigned under this Section 6.4, the Physician hereby irrevocably waives in favor of Forefront, to the extent permitted by applicable law, any and all claims the Physician may now or hereafter have in any jurisdiction to all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as "moral rights" in relation to all works of authorship to which the assigned copyrights apply.

6.4.5   Definitions. For purposes of this Section 6:

(a) "Intellectual Property Rights" means all rights in and to US and foreign (i) patents, patent disclosures and inventions (whether patentable or not), (ii) trademarks, service marks, trade dress, trade names, logos, corporate names and domain names, and other similar designations of source or origin, together with the goodwill symbolized by any of the foregoing, (iii) copyrights and copyrightable works (including computer programs), mask works, and rights in data and databases, (iv) trade secrets, know-how and other confidential information, and (v) all other intellectual property rights, in each case whether registered or unregistered and including all registrations and applications for, and renewals or extensions of, such rights, and all similar or equivalent rights or forms of protection in any part of the world.

(b) "Work Product" means all writings, works of authorship, technology, inventions, discoveries, processes, techniques, methods, ideas, concepts, research, proposals, materials and all other work product of any nature whatsoever, that are created, prepared, produced, authored, edited, amended, conceived or reduced to practice by the Physician individually or jointly with others during the period of the Physician's employment by Forefront and relating in any way to the business or contemplated business, products, activities,

Case 2:20-cv-01856-LA   Filed 09/28/20   Page 43 of 59   Document 1-1

research or development of Forefront or resulting from any work performed by the Physician for Forefront (in each case, regardless of when or where the work product is prepared or whose equipment or other resources is used in preparing the same), all rights and claims related to the foregoing, and all printed, physical and electronic copies and other tangible embodiments thereof.

## VII. RESTRICTIVE COVENANT

1. <u>Covenant Not To Compete and Not to Solicit</u>. Physician recognizes that Forefront has and is investing time, effort and funds in helping Physician develop a medical practice. Physician further recognizes that Forefront would incur significant damage if Physician were allowed to compete with Forefront after receiving assistance and before Forefront has a reasonable opportunity to help another physician develop a similar practice. Therefore, Physician agrees that, upon termination of Physician's employment with Forefront for any reason, and for a period of two years thereafter, Physician will not:

   1.1. Provide any medical care in Physician's specialty, whether by appointment or on a walk-in or an urgent care basis without an appointment, within a twenty-mile radius of any Forefront facility at which Physician has had at least 33% of Physician's office hours or in which Physician performed at least 33% of Physician's professional procedures, in either case, in the period of 12 months immediately prior to the termination of Physician's employment with Forefront.

   1.2. Solicit any Forefront patient who Physician treated or provided medical services to as a Forefront physician-employee within the 12-month period immediately prior to the termination of Physician's employment with Forefront.

   1.3. Solicit, directly or indirectly, any employee of Forefront to work with or for another medical practice or clinic, physicians' office, hospital or health care entity providing or attempting to provide health care services. to patients within the geographical restriction defined and set forth in Section 7.1.1, above.

2. <u>Irreparable Harm</u>. Parties agree that any breach of the terms of this <u>Section VII</u> will cause immediate and irreparable injury to Forefront for which there exists no adequate remedy at law, thus entitling Forefront to immediate injunctive relief without the posting of a bond to enjoin such breach, without prejudice to any other rights or remedies afforded Forefront under this Agreement. Physician waives the posting of a bond or undertaking as a condition of such relief. The Parties covenant and agree that the costs of enforcement of this <u>Section VII</u> caused or necessitated by Physician's breach of this Agreement, including Forefront's reasonable attorneys' fees, will be borne by Physician if Forefront is deemed or held to be a prevailing party in any litigation against Physician to enforce its rights under this Agreement.

3. <u>Modification</u>. Parties agree that to the extent that any provision or portion of this Agreement is held, found or deemed to be unreasonable, unlawful or unenforceable by a court of competent jurisdiction, then any such provision or portion thereof will be deemed to be modified to the extent necessary in order that any such provisions or portion thereof will be legally enforceable to the fullest extent permitted by applicable law. The Parties do further agree that any court of competent jurisdiction will have the authority and ability to enforce any such provisions or portion thereof or to modify any such provision or portion thereof in order that such provision or portion thereof will be enforced by such court to the fullest extent permitted by applicable law.

4. <u>Charitable and Good Samaritan Work</u>. Nothing in this <u>Section VII</u> precludes Physician from providing medical care or other professional services or consultation on a charity, non-

billable or other non-income producing basis and for which Physician is paid no salary or other compensation of any kind, or in an emergency situation as a Good Samaritan.

## VIII. OWNERSHIP OF BOOKS AND RECORDS

1. <u>Forefront is the Owner of Books and Records</u>. The Parties agree that Forefront is the exclusive owner of any and all administrative records, patients' records, and other records generated in connection with Forefront's business, including without limitation, any records prepared in whole or in part by Physician in connection with the performance of duties performed under this Agreement.

2. <u>Physician's Access to Records</u>. During the term of this Agreement, Forefront will make such records available to Physician as necessary for the performance of services under this Agreement or to the extent necessary for Physician to defend himself/herself in any action related to the services provided to any patient under this Agreement.

3. <u>Return of Records</u>. Upon termination of Physician's employment under this Agreement, or at any time upon Forefront's request, Physician must return to Forefront all of its property and information, including, but not limited to, all of Forefront's documents, keys, credit cards, cell phones, computers, computer software, files, business records, patient information and any other business information belonging to Forefront in Physician's possession or under Physician's control.

## IX. MISCELLANEOUS

1. <u>Use of Name, Picture, and Likeness</u>. Physician grants to Forefront the exclusive right to use Physician's name, picture and likeness in all forms of media, including the Internet, during the term of this Agreement to actively promote and/or market Forefront's business and/or Physician's medical practice.

2. <u>Entire Agreement; Survival</u>. This Agreement supersedes all prior agreements between or affecting Physician and Physician's relationship with Forefront. Anything not set forth in this Agreement or specifically referenced in this Agreement will have no force or effect and this Agreement may only be amended in writing, in a separate document, signed by the Parties. Forefront shall have the right to terminate or unilaterally amend this Agreement to comply with any legal order issues, or proposed to be issued, by a federal or state agency, or to comply with any provision or law or requirement of accreditation, participation or licensure which (1) invalidates or is inconsistent with this Agreement; or (ii) would cause either Party to be in violation of the law. The rights and obligations set forth in Sections 4.2.2, 4.2.3, 4.4, 5.2, 6.1, 6.2, 6.3, VII, 8.3, IX and those Sections that by their terms or context survive the termination of this Agreement and the Parties right to enforce the provisions of those Sections survive the termination of this Agreement.

3. <u>Binding Agreement</u>. This Agreement is binding upon, and inures to the benefit of the Parties, their respective representatives, heirs, devisees, successors and assigns.

4. <u>Venue/Jurisdiction</u>. This Agreement is and will be governed by and construed under the laws of the State of Wisconsin excluding its choice of law rules or statutes. The Parties agree, subject to each court's respective subject matter jurisdiction, that the exclusive forum for any litigation relating to this Agreement will be in the federal courts of the Eastern District of Wisconsin or the Circuit Court of Manitowoc County in Wisconsin and hereby expressly consent to the jurisdiction of such courts provided that any such court has subject matter

jurisdiction. The Parties agree that any such court has personal jurisdiction, and each Party waives any defense to any such court having personal jurisdiction.

5. <u>Right of Offset</u>. Physician expressly agrees that Forefront has the right to offset or withhold against any sums or amounts due Physician, including any sums due as compensation for services provided, to reimburse Forefront for any amount Forefront reasonably believes Physician owes Forefront under this Agreement.

6. <u>Notice</u>. Any notice required or permitted to be given under this Agreement will be sufficient if in writing, and if personally delivered or sent by registered U.S. Mail to the party's last known address.

7. <u>Severability</u>. The sections, clauses, and provisions of this Agreement are severable. If any provision of this Agreement or any amendment hereof should be held invalid by operation of law or by any court of competent jurisdiction, or if compliance with or enforcement of any provision is restrained by such court pending a final determination as to its validity, the remainder of this Agreement and its application to the Parties will not be affected.

8. <u>Captions</u>. The captions used as headings in this Agreement are for convenience only. The Parties agree that the captions are not part of this Agreement and are not to be determined the intent of the Parties.

9. <u>Waivers</u>. No waiver, express or implied, by either Party of any provision of this Agreement will be effective unless in writing and signed by the party to be held by the waiver. The waiver of one provision will not be a waiver of any other provision, and one waiver will not be a waiver of a subsequent breach.

10. <u>Electronic Signatures; Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which, for all purposes, will be deemed an original, and all of which will constitute one and the same agreement. Signatures sent via e-mail or other electronic method, and signatures stored in PDF or other electronic format, will be considered effective and original.

IN WITNESS WHEREOF, intending to be legally bound, the Physician and Forefront have executed this Agreement as of the date first written above.

**PHYSICIAN:**

**EMPLOYER**: DERMATOLOGY ASSOCIATES OF WISCONSIN, S.C.

Name: Rachel Ade Koziczkowski, M.D.

Kenneth H. Katz, M.D., President

**ADDITIONAL PHYSICIAN EMPLOYMENT MATTERS**

**RACHEL ADE KOZICZKOWSKI, MD**

## TERM.

This Agreement has an Initial Term of three (3) years, beginning ___*October 1*___, 201_6_ and ending on ___*September 30*___, 201_9_, unless earlier terminated by either party under <u>Section V</u> of the Agreement. Each Term thereafter will be for a period of two (2) years.

## FULL-TIME EMPLOYMENT.

Physician will work full-time, defined as four (4) eight (8) hour days per week (i.e. 32 hours per week).

## PRACTICE LOCATION.

Physician's primary practice location will be Forefront's clinic located at a location yet to be determined in or around Rock Island, Illinois. Physician will provide services under this Agreement at satellite and new clinic locations as reasonably requested by Forefront from time to time.

## MOVING EXPENSES.

Provided Physician would be entitled to deduct moving expenses under the IRS "distance test" (see IRS Publication 521), Forefront will be responsible for up to Ten Thousand and 00/100 dollars ($10,000.00) in relocation expenses incurred by Physician. Physician will work with Forefront to coordinate a mutually agreeable methodology by which such moving expenses are to be paid either by reimbursement to Physician or directly by Forefront to mover. Physician will provide Forefront with satisfactory substantiation of such expenses prior to such reimbursement.

Physician agrees that, in the event that his/her employment terminates for any reason under <u>Section V</u> of the Agreement, within 12 months of the Effective Date of the Agreement, Physician will pay Forefront 100% of any Moving Expenses reimbursed by Forefront within thirty (30) days of termination. After 12 months of employment, Physician will have no obligation to pay Forefront for any Moving Expenses that were reimbursed to Physician.

## BASE SALARY.

For all services rendered by Physician pursuant to this Agreement, Forefront will pay Physician an annual base salary of Three Hundred Thousand and 00/100 dollars ($300,000.00) which will be paid on a pro-rata basis in accordance with Forefront's normal and customary payroll practices that are in effect from time to time. Physician's annual base salary will be pro-rated on a daily basis for any period of service at the inception or termination of Physician's employment with Forefront that is less than a full payment period.

## SIGN-ON AND RETENTION BONUS.

As an incentive to enter into this Agreement and remain employed throughout the Initial Term of this Agreement, Forefront will pay to Physician the sum of $50,000.00 ("Sign-on and Retention Bonus"), paid in installments as follows, subject to the requirements hereof:

_____   KK

$10,000.00, payable upon completion of Forefront's marketing orientation day as coordinated between Forefront and Physician and, if applicable, Physician's obtaining his or her state medical license as required by this Agreement;

and

$40,000.00, payable at the time of Physician's first payroll payment after Physician has begun providing services under this Agreement.

If Physician is not licensed at the time of this Agreement's execution, neither of the abovementioned payments will be made until such a license is obtained.

The Sign-on and Retention Bonus is not fully earned unless Physician remains employed through the completion of the Initial Term, and the Sign-on and Retention Bonus will be considered a cash advance under the applicable law. Accordingly, if this Agreement is terminated prior to the payment of one or more installments for any reason, no unpaid installment will be paid. Further, if this Agreement is terminated prior to the completion of the Initial Term for any reason other than breach by Forefront, then Physician will, within thirty (30) days of termination, pay to Forefront an amount (the "Unearned Amount") equal to the amount of the Sign-on and Retention Bonus. Physician agrees to pay all costs and expenses (including without limitation reasonable attorneys' fees and costs) incurred by Forefront in collecting the Unearned Amount.

Physician understands that he or she may also be required to repay Forefront for taxes paid on Physician's behalf when the Sign-on and Retention Bonus was paid. Forefront hereby reserves the right to make adjustments for income tax or withholding purposes in order to comply with applicable tax laws.

**OTHER BENEFITS.**

Physician shall have access to such other benefits to Forefront's similarly situated physicians employed in Illinois have access to.

**VACATION.**

Physician will be entitled to 16 days of vacation/Paid Time Off ("PTO") (4 weeks based on a 4 day work week). Such PTO will be accrued in accordance with Forefront's PTO policy that is in effect from time to time. All vacation or PTO time must be approved in advance by Forefront or taken otherwise in compliance with Forefront's policies. Any unused vacation or PTO time will not accumulate from year to year and will be forfeited upon termination of employment.

**CONTINUING PROFESSIONAL EDUCATION.**

Forefront will provide Physician with one day of paid time off and $1,000 each year for each full day worked per average week to attend seminars and courses for continuing professional education credits (e.g., physicians who work 5 full days per week will receive 5 paid days off per year and $5,000 for such purposes) in accordance with Forefront's policy that is in effect from time to time. Any time off to attend a seminar or course to obtain continuing professional education credits must be approved in advance by Forefront, and Forefront reserves the right to deny any request for time off to attend such seminar or course in Forefront's discretion.

**BUSINESS EXPENSES.**

Forefront will reimburse Physician for reasonable expenses incurred by Physician in connection with the performance of Physician's duties pursuant to this Agreement, including, but not limited to, medical staff membership fees, professional dues and approved educational expenses, books and periodicals relevant to Physician's professional practice, travel expenses, expenses in connection with approved seminars, professional conventions, or similar professional functions, and other reasonable business expenses. Forefront will be responsible for reimbursing Physician only for such expenses approved by Forefront in advance.

## PATIENT AVAILABILITY EXPECTATIONS.

Physician will maintain reasonable office hours to ensure adequate patient access to care and provide services which Physician is qualified to perform. Forefront's access to care expectations include appointment availability for a minimum of 6 appointments per hour (taking into consideration the complexity and nature of each patient visit – for example a 30 minute surgery would be equivalent to 3 – 10 minute appointments). [OPTIONAL FOR MOHS INSERT – "six (6) to ten (10) Mohs cases on a designated Mohs day and a minimum of"] [OPTIONAL FOR MOHS: "The scheduling of Physician's Mohs days and dermatology clinic days will be determined by Forefront, in its sole discretion."]

## ON-CALL COVERAGE EXPECTATIONS.

Physician will participate in the on-call coverage rotation as required by Forefront. Physician's obligations will be consistent with other similarly situated Forefront physicians practicing in Illinois.

# EXHIBIT D

## Important:

<span style="color:blue">**ONLINE REPORT**</span>

This is NOT a CONSUMER REPORT and does not constitute a "consumer report" under the Fair Credit Reporting Act ("FCRA"). This report may not be used to determine the eligibility for credit, insurance, employment or any other purpose regulated under the FCRA.

This system may be used only in accordance with your Subscriber Agreement, the Gramm-Leach-Bliley Act ("GLBA"), the Driver's Privacy Protection Act ("DPPA") and all other applicable laws.   User agrees to having knowledge of all applicable laws pertaining to the usage of data.  User accepts all responsibility civilly and criminally for any use of this system.

Violations of these restrictions or misuse of this system will cause your access to be terminated and will cause an immediate investigation.

### Comprehensive Report

**Comprehensive Report**
**Date:** 09/28/2020
Reference ID: **214678-0006/CHROPOWICZ**

**Report Legend**
  - Deceased Person

Relatives

> - 1st Degree of Separation
>> - 2nd Degree of Separation
>>> - 3rd Degree of Separation

## Subject Information

### Indicators

(Best Information for Subject)

Name: RACHEL A KOZICZKOWSKI (07/01/2010 to 07/04/2020)
Name: RADIL ANN ADE (12/09/2005 to 07/04/2020)
Name: RACHEL ANN ADE (09/01/2002 to 04/30/2020)
Name: RACHEL ADE KOZICZKOWSKI (05/04/2017 to 04/21/2020)
Name: RACHEL ANN KOZICZKOWSKI
Date of Birth: ███████████, Born **36** years ago
Gender: **Female**
SSN: ███████ issued in **ILLINOIS** between **1984-1986**
SSN: ███████ issued in **WISCONSIN** in **1975**

**Other Names Associated with Subject**
None found

**Other DOBs Associated with Subject**
Date of Birth: ██████████
Current Age: **34**
Date of Birth: ██████████
Current Age: **79**

**Possible Phones Associated with Subject:**
██████████ (CT) (Mobile) (86%)
██████████ (CT) (LandLine) (78%)
██████████ (CT) (Mobile) (66%)
██████████ (CT) (Mobile) (66%)
██████████ (CT) (Mobile) (66%)
██████████ (CT) (LandLine) (3%)

Bankruptcies: **No**
Liens: **No**
Judgments: **No**
Properties: **Yes**
Corporate Affiliations: **Yes**
Criminal/Traffic: ████
Global Watch Lists Match: **No**

**Email Addresses Associated with Subject**
██████████ (58%)

Other Individuals Observed with shared SSN:
██████████████  ██████████████
██████████

## Potential Subject Photos (None Found)

## Possible Criminal Records ███████



## Possible Employers (3 Found)

Business Name: **QUAD CITIES DERMATOLOGY, LLC (06/25/2020)** [ View Business Record ]
Address: **4010 KATHLEEN WAY, DAVENPORT, IA 52807 (SCOTT COUNTY)**

Business Name: **DOCTORS DIG (03/16/2012 to 04/02/2012)**
Phone: **(309) 721-4229 (CT) DOCTORS DIG**
Address: **2518 GAYLORD AVE, SPRINGFIELD, IL 62704 (SANGAMON COUNTY)**

Business Name: **KOZICZKOWSKI RACHEL ADE MD** [ View Business Record ]
Phone: **(309) 277-6552 (CT) KOZICZKOWSKI RACHEL ADE MD**
Address: **615 VALLEY VIEW DR, MOLINE, IL 61265 (ROCK ISLAND COUNTY)**

## Address Summary (11 Found)

5512 30TH AVE, MOLINE, IL 61265-5726 (ROCK ISLAND COUNTY) (07/2016 to 09/28/2020)
4010 KATHLEEN WAY, DAVENPORT, IA 52807-3931 (SCOTT COUNTY) (04/2017 to 09/03/2020)
5202 37TH AVENUE CT, MOLINE, IL 61265-6636 (ROCK ISLAND COUNTY) (09/2002 to 09/03/2020)
6278 PRAIRIE PARK DR, EAU CLAIRE, WI 54701-5221 (EAU CLAIRE COUNTY) (08/01/2014 to 08/2016)
3734 LORTON AVE, DAVENPORT, IA 52807-2359 (SCOTT COUNTY) (12/04/2015 to 12/04/2015)
2420 N PEACH AVE, EAU CLAIRE, WI 54701 (EAU CLAIRE COUNTY) (09/20/2014 to 09/20/2014)
2420 N PEACH AVE APT 3, MARSHFIELD, WI 54449-8359 (MARATHON COUNTY) (07/2010 to 08/04/2014)
2420 N PEACH AVE, MARSHFIELD, WI 54449-8359 (MARATHON COUNTY) (07/08/2010 to 11/18/2013)

2518 GAYLORD AVE, SPRINGFIELD, IL 62704-1435 (SANGAMON COUNTY) (10/2008 to 06/14/2014)
708 E GLENDALE AVE, APPLETON, WI 54911-2947 (OUTAGAMIE COUNTY) (10/01/2012 to 10/02/2012)
518 W LOCUST ST # 313, DAVENPORT, IA 52803-2829 (SCOTT COUNTY)

## Address Details (11 Found)



**4010 KATHLEEN WAY, DAVENPORT IA 52807-3931 (SCOTT COUNTY)** (04/2017 to 09/03/2020)   [ Back to Summary  ]
  Subdivision Name: **WALSH POINTE**
  Owners:
    **CHAD KOZICZKOWSKI** [ View Person Record ]
    **ADE K RACHEL**
  Purchase Date: **05/26/2020**
  Assessed Value: **$443,570**
  Living Square Feet: **3,504**
  Land Square Feet: **24,200**



# Scott County / City of Davenport, Iowa

## Summary - Auditor's Office

| | |
|---|---|
| Parcel ID | Y0539-20B |
| Alternate ID | Y24020 |
| Property Address | **4010 KATHLEEN WAY** |
| | **DAVENPORT IA 52807** |
| Sec/Twp/Rng | N/A |
| Brief Tax Description | WALSH POINTE 1ST ADD Lot: 020 WALSH POINTE 1ST ADD |
| | (Note: Not to be used on legal documents) |
| Deed Book/Page | |
| Contract Book/Page | 2017-8037 |
| Gross Acres | 0.00 |
| Net Acres | 0.00 |
| Adjusted CSR Pts | 0 |
| Class | R - Residential |
| | (Note: This is for tax purposes only. Not to be used for zoning.) |
| District | DAB - DAVENPORT BETTENDORF |
| School District | BETTENDORF SCHOOLS |
| Subdivision | WALSH POINTE 1ST ADD |



## Owners - Auditor's Office

| Deed Holder | Contract Holder | Mailing Address |
|---|---|---|
| KOZICZKOWSKI CHAD D | | KOZICZKOWSKI CHAD D |
| 4010 KATHLEEN WAY | | 4010 KATHLEEN WAY |
| DAVENPORT IA 52807 | | DAVENPORT IA 52807 |
| | | |
| KOZICZKOWSKI RACHEL ADE | | |
| 4010 KATHLEEN WAY | | |
| DAVENPORT IA 52807 | | |

## Land - Assessor's Office

| | |
|---|---|
| Map Area | Y24A (2000-2009 Yr B |
| Lot Dimensions | Regular Lot: 100.0 x 242.00 |
| Lot Area | 0.56 Acres; 24,200 SF |

Land Sizes Used For Assessment Purposes Only. Not A Survey Of The Property.

## Residential Dwellings - Assessor's Office

**Residential Dwelling**

| | |
|---|---|
| Occupancy | Single-Family |
| Style | 2 Story Frame |
| Year Built | 2004 |
| Exterior Material | Aluminum |
| Total Gross Living Area | 3,504 SF |
| Attic Type | None; |
| Number of Rooms | 0 above; 0 below |
| Number of Bedrooms | 4 above; 0 below |
| Basement Area Type | Full |
| Basement Area | 1,767 |
| Basement Finished Area | |
| Plumbing | 2 Full Bath |
| | 1 Shower Stall Bath |
| | 1 Toilet Room |
| | 2 Lavatory |
| | 1 Whirlpool Tub |
| | 1 Fbgls Service Sink |
| Central Air | Yes |
| Heat | FHA - Gas |
| Fireplaces | 1 Gas-Vertical; |
| Porches | 1S Frame Open (59 SF); |
| Decks | Wood Deck-Med (228 SF); |
| Additions | 1 Story Frame (400 SF); |
| | 1 Story Frame (238 SF) (238 Bsmt SF); |
| | 1 Story Frame (192 SF) (192 Bsmt SF); |
| Garages | 850 SF - Att Frame (Built 2004); |

## Photos - Assessor's Office

# EXHIBIT E

Search for:

forefront

[Search Records]

Search
Advanced Search
Name Availability

**Corporate Records**

Result of lookup for **5D08125** (at 9/28/2020 3:37 PM )

# FOREFRONT DERMATOLOGY, S.C.

**You can:** File an Annual Report - Request a Certificate of Status - File a Registered Agent/Office Update Form

### Vital Statistics

| | |
|---|---|
| **Entity ID** | 5D08125 |
| **Registered Effective Date** | 03/14/1980 |
| **Period of Existence** | PER |
| **Status** | Restored to Good Standing   Request a Certificate of Status |
| **Status Date** | 01/22/2016 |
| **Entity Type** | Service Corporation |
| **Annual Report Requirements** | Service Corporations are required to file an Annual Report under s.180.1921 WI Statutes. |

### Addresses

| | |
|---|---|
| **Registered Agent Office** | C T CORPORATION SYSTEM<br>301 S. BEDFORD ST. SUITE 1<br>MADISON , WI 53703<br><br>File a Registered Agent/Office Update Form |
| **Principal Office** | 801 YORK STREET<br>ATTN: LEGAL<br>MANITOWOC , WI 54220<br>UNITED STATES OF AMERICA |

### Historical Information

**Annual Reports**

| Year | Reel | Image | Filed By | Stored On |
|------|------|-------|----------|-----------|
| 2020 | 000 | 0000 | online | database |
| 2019 | 000 | 0000 | online | database |
| 2018 | 000 | 0000 | online | database |
| 2017 | 000 | 0000 | online | database |
| 2016 | 000 | 0000 | online | database |
| 2014 | 111 | 1111 | paper | image |
| 2013 | 111 | 1111 | paper | image |

| Year | | | | |
|------|-----|------|-------|-----------|
| 2012 | 111 | 1111 | paper | image |
| 2011 | 111 | 1111 | paper | image |
| 2010 | 111 | 1111 | paper | image |
| 2009 | 111 | 1111 | paper | image |
| 2008 | 111 | 1111 | paper | image |
| 2007 | 111 | 1111 | paper | image |
| 2006 | 111 | 1111 | paper | image |
| 2005 | 111 | 1111 | paper | image |
| 2004 | 111 | 1111 | paper | image |
| 2003 | 111 | 1111 | paper | image |
| 2002 | 004 | 2081 | paper | microfilm |
| 2001 | 002 | 0402 | paper | microfilm |
| 2000 | 001 | 0749 | paper | microfilm |
| 1999 | 001 | 0771 | paper | microfilm |
| 1998 | 001 | 1849 | paper | microfilm |
| 1997 | 001 | 0624 | paper | microfilm |
| 1996 | 002 | 1820 | paper | microfilm |
| 1995 | 001 | 1684 | paper | microfilm |
| 1994 | 002 | 2204 | paper | microfilm |

File an Annual Report - Order a Document Copy

**Certificates of Newly-elected Officers/Directors**

| Year | Reel | Image | Filed By | Stored On |
|------|------|-------|----------|-----------|
| 1980 | 151 | 1253 | paper | microfilm |

Order a Document Copy

**Old Names**

| Change Date | Name |
|-------------|------|
| Current | FOREFRONT DERMATOLOGY, S.C. |
| 03/29/2018 | DERMATOLOGY ASSOCIATES OF WISCONSIN, S.C. |
| 10/28/2004 | DERMATOLOGY ASSOCIATES OF MANITOWOC, S.C. |
| 05/09/2001 | DR. HENRY M. KATZ, S.C. |

**Chronology**

| Effective Date | Transaction | Filed Date | Description |
|----------------|-------------|------------|-------------|
| 03/14/1980 | Incorporated/Qualified/Registered | 03/14/1980 | ***RECORD IMAGED*** |
| 05/09/2001 | Amendment | 05/11/2001 | Old Name = DR. HENRY M. KATZ, S.C. |
| 03/16/2004 | Change of Registered Agent | 03/16/2004 | FM 12 2004 |
| 10/28/2004 | Amendment | 11/03/2004 | Old Name = DERMATOLOGY ASSOCIATES OF MANITOWOC, S.C. |
| 03/06/2006 | Change of Registered Agent | 03/06/2006 | FM 12 2006 |
| 01/17/2012 | Amendment | 01/23/2012 | |
| 06/28/2013 | Amendment | 07/03/2013 | |
| 09/30/2014 | Change of Registered Agent | 09/30/2014 | FM12-2014 |

| 01/01/2016 | Delinquent | 01/01/2016 | |
| 01/22/2016 | Restored to Good Standing | 01/22/2016 | OnlineForm 12 |
| 05/04/2016 | Change of Registered Agent | 05/09/2016 | |
| 05/10/2017 | Change of Registered Agent | 04/26/2017 | Bulk Filing |
| 03/29/2018 | Amendment | 03/30/2018 | Old Name = DERMATOLOGY ASSOCIATES OF WISCONSIN, S.C. |
| 01/17/2019 | Amendment | 01/18/2019 | |

Order a Document Copy

United States of America

State of Wisconsin

# DEPARTMENT OF FINANCIAL INSTITUTIONS

Division of Corporate & Consumer Services

To All to Whom These Presents Shall Come, Greeting:

I, Patti Epstein, Administrator of the Division of Corporate and Consumer Services, Department of Financial Institutions, do hereby certify that

### **FOREFRONT DERMATOLOGY, S.C.**

is a domestic corporation or a domestic limited liability company organized under the laws of this state and that its date of incorporation or organization is March 14, 1980.

I further certify that said corporation or limited liability company has, within its most recently completed report year, filed an annual report required under ss. 180.1622, 180.1921, 181.1622 or 183.0120 Wis. Stats., and that it has not filed articles of dissolution.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the official seal of the Department on September 28, 2020.



PATTI EPSTEIN, Administrator
Division of Corporate and Consumer Services
Department of Financial Institutions

DFI/Corp/33

**To validate the authenticity of this certificate**

Visit this web address: http://www.wdfi.org/apps/ccs/verify/

Enter this code: **276839-77BE18CF**